STRADLEY RONON STEVENS & YOUNG, LLP
A Pennsylvania Limited Liability Partnership
By:    Eric M. Hurwitz Esquire
          Benjamin E. Gordon, Esquire
457 Haddonfield Road, Suite 100
Cherry Hill, NJ   08002-2223
T: (856) 321-2400
F: (856) 321-2415
E: ehurwitz@stradley.com; bgordon@stradley.com

*Counsel for Defendants, Navient Corporation and Navient Solutions, LLC, incorrectly sued as "Navient Solutions, Inc. f/k/a Sallie Mae, Inc."*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAULIK SANGHAVI and MICHELLE ROBALINO-SANGHAVI, <br><br> Plaintiffs, <br><br> v. <br><br> NAVIENT CORPORATION, NAVIENT SOLUTIONS, INC. f/k/a SALLIE MAE, INC. and SLM CORPORATION, <br><br> Defendants. | No. 2:18-cv-00233-KM-CLW <br><br> Filed Electronically <br><br> **MEMORANDUM IN SUPPORT OF RE-FILED APPEAL OF MAGISTRATE JUDGE WALDOR'S JANUARY 22, 2019 DECISION ON PLAINTIFFS' MOTION TO COMPEL** <br><br> **Motion Day:  September 3, 2019** |

## **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ...................................................................1

II.   FACTUAL BACKGROUND...................................................................3

      A.    Overview of the Case. ............................................................3

      B.    Written Discovery. ................................................................5

      C.    Plaintiffs' Motion to Compel and Judge Waldor's Decision................5

III.  LEGAL STANDARD ..........................................................................6

IV.   ARGUMENT...................................................................................7

      A.    This Appeal was Timely Filed on February 5, 2019............................7

      B.    Many of Plaintiffs' Requests are Objectionable as
            Irrelevant and Not Proportional to the Needs of This Case. ................8

            1.    Plaintiffs' Objectionable Discovery as to
                  Defendants' Organizational Structure .....................................11

            2.    Plaintiffs' Objectionable Discovery as to
                  Other Borrowers..........................................................13

            3.    Plaintiffs' Objectionable Discovery as to the
                  Design of Defendants' Online Systems and Forms..................19

            4.    Plaintiffs' Objectionable Requests as to
                  the Compensation of Individual Employees,
                  Including Executives that Had No Role in
                  Servicing Plaintiffs' Loans .....................................21

            5.    Plaintiffs' Objectionable Request as to
                  All Loan  Products Offered by Defendants
                  Since January 1, 2003. ..............................................22

            6.    Plaintiffs' Objectionable Request as to
                  the Privileged Materials that went into the FACT SHEET. ......22

i

C.    Defendants Already Answered in full a
Number of Plaintiffs' Discovery Requests
that Are Subject to Judge Waldor's Decision. ...................................23

V.    CONCLUSION...............................................................................24

# TABLE OF AUTHORITIES

## CASES

*Ansell v. Green Acres Contracting Co.*,
    347 F.3d 515 (3d Cir. 2003) ...................................................................18

*Becker v. ARCO Chem. Co.*,
    207 F.3d 176 (3d Cir. 2000) ..................................................................18

*Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Cntr. Assoc.*,
    864 A.2d 387 (N.J. 2005) ......................................................................10

*Doe v. Hartford Life Acc. Ins. Co.*,
    237 F.R.D. 545 (D.N.J. 2006).............................................................7, 11

*Haines v. Liggett Group Inc.*,
    975 F.2d 81 (3d Cir. 1992) .......................................................................7

*Levy-Tatum v. Navient & Sallie Mae Bank*,
    No. 15-cv-3794, 2016 WL 75231 (E.D. Pa. Jan. 7, 2016) .............................. 3-4

*North Shore-Long Island Jewish Health Systems, Inc. v. Multiplan, Inc.*,
    325 F.R.D. 36 (E.D.N.Y. 2018)...............................................................8

*U.S. v. Caldwell*,
    760 F.3d 267 (3d Cir. 2014) .......................................................... 17-18

*United States v. United States Gypsum Co.*,
    333 U.S. 364 (1948).........................................................................7, 11

*Triffin v. Automatic Data Processing, Inc.*,
    926 A.2d 362, (N.J. Super Ct. App. Div., 2007) .......................................9

## STATUTES

15 U.S.C. § 6801 *et seq*.....................................................................14

15 U.S.C. § 6802......................................................................... 14-15

28 U.S.C. § 636(b)(1)(A)....................................................................6

## Rules

Fed. R. Civ. P. 1 ........................................................................................4

Fed. R. Civ. P. 8(a)(2) ...........................................................................1, 4

Fed. R. Civ. P. 11 .....................................................................................2

Fed. R. Civ. P. 26 ..............................................................................*Passim*

Fed. R. Civ. P. 26(b)(1) ........................................................................ 8-9

Fed. R. Civ. P.72(a) ..................................................................................6

Fed. R. Evid. 403 ...................................................................................18

Fed. R. Evid. 404 ...................................................................................17

L.Civ.R. 72.1(c)(1) ...................................................................................6

L.Civ.R. 72.1(c)(1)(A) ..............................................................................7

Defendants, Navient Corporation and Navient Solutions, LLC, incorrectly sued as "Navient Solutions, Inc. f/k/a Sallie Mae, Inc.," respectfully submit this memorandum in support of their re-filed appeal of Magistrate Judge Waldor's January 22, 2019 decision to grant, in part, Plaintiffs' motion to compel.[1]

## I.    PRELIMINARY STATEMENT

Plaintiffs' discovery requests are overbroad and burdensome, they seek irrelevant information, disproportionate to the needs of the case, and they are unmoored from the limitations of Rule 26. Plaintiffs contend that this case is about the servicing of their student loans, and specifically allegedly misapplication of certain of their payments to interest instead of to principal. To support these relatively straightforward claims, Plaintiffs seek, by way of example:

- Draft contracts related to the corporate formation of Defendants;

- An understanding of how Defendants' executives are compensated;

---

[1] Defendants previously filed this appeal on February 5, 2019, returnable March 4, 2019. (Dkt. 36.) In the February 5, 2019 filing, Defendants made reference to what they understood at the time to be a decision by Magistrate Judge Waldor on Defendants' cross-motion to compel. Magistrate Judge Waldor thereafter clarified that she had not made a decision on that cross-motion, but had rather held it in abeyance. In response, Defendants, through their reply briefing in further support of the appeal (Dkt. 42), withdrew their appeal as to their (un-decided) cross-motion to compel. On August 1, 2019, and after a telephonic status conference with counsel for the parties, Magistrate Judge Waldor administratively terminated the previously-filed appeal and directed Defendants to re-file the appeal without regard to their still-pending cross-motion. (Dkt. 49.) This is Defendants' re-filed appeal.

- An accounting of every pleading (filed in every case), in which Defendants have ever been a party:

- The computer code for Defendants' website;

- A detailed explanation of how and why Defendants chose the font for their billing statements.

These are just a few examples.

The reality is that Defendants, at the time they initially filed this appeal, had already produced 2,590 pages of documents, including several thousand pages of files that are specific to Plaintiffs and/or their loans. Defendants are mindful of their duty to supplement discovery and have undertaken additional searches for any additional information specific to Plaintiffs' loans, including any recent, additional, as yet unproduced, account notes and correspondence, as well as other information. Defendants do not object to producing this account-specific information. The additional types of information discussed above and more fully below, however, are overboard, irrelevant and not even remotely proportional to the needs of this case.

Defendants raised all of these issues in connection with Plaintiffs' motion to compel, which was heard by Magistrate Judge Waldor during a hearing on January 22, 2019. As explained more fully below, Defendants believe several of the conclusions of the Magistrate Judge were erroneous and cannot be reconciled with Rule 26, the relevant issues in dispute, and the needs of the case. Therefore, Defendants appealed to this Court, and re-file their appeal now.

## II.    <u>FACTUAL BACKGROUND</u>

### A.    <u>Overview of the Case.</u>

Plaintiffs, who are married, initiated this case *pro se* (though Mr. Sanghavi is an attorney) to redress alleged issues with their student loans serviced by Defendants.

Defendants are Navient Corporation and Navient Solutions, LLC ("NSL"). Navient Corporation is not a proper party to this suit.  Rather, it is just a holding company.  Other than being the corporate parent of NSL, it has no connection to Plaintiffs whatsoever.

NSL is a loan servicer.  It services Plaintiffs' student loans, though it did not originate them.  By way of background (which has been shared with Plaintiffs), through a well-publicized reorganization on May 1, 2014, SLM Corporation was restructured into two companies that included: (1) a restructured SLM Corporation (of which Sallie Mae Bank was a part); and (2) Navient Corporation.  The same day as the restructuring, another entity, Sallie Mae, Inc. changed its name to Navient Solutions, Inc., and became a wholly-owned subsidiary of Navient Corporation.  The legacy servicing of student loans handled by Sallie Mae, Inc. transferred to Navient Solutions, Inc.  Navient Solutions, Inc. was later further reorganized into an LLC—Navient Solutions, LLC (NSL).  <u>See</u> <u>Levy-Tatum v. Navient & Sallie Mae Bank</u>, No. 15-cv-3794, 2016 WL 75231, at *6 (E.D. Pa. Jan.

7, 2016) (setting forth the facts, and taking judicial notice, of SLM Corporation's corporate restructuring); see also 2014 SEC Form 10-K for Navient Corporation, available at https://www.navient.com/assets/about/investors/shareholder/annual-reports/NAVI_2014_Form_10-K_2-27-15_Final.pdf.

The Complaint is 77 pages long (without exhibits) and numbers 358 paragraphs.  (See Compl. (Dkt. 1).)  It is little more than a densely-packed list of grievances.  It includes sections that are impenetrable to read or understand.  It is impossible to determine which factual paragraphs are meant to support which causes of action.  It is likewise impossible to separate alleged facts that *may* support a cause of action from those that were included just because Plaintiffs found something to be aggravating or frustrating.  Indeed, the Complaint does not even appear to comply with either Rules 1 or 8.  See Fed. R. Civ. P. 1 (mandating the "just, speedy, and inexpensive determination of every action and proceeding"); Fed. R. Civ. P. 8(a)(2) (mandating a "short and plain statement of the claim showing that the pleader is entitled to relief.)

At its core, however, this case appears to turn on the terms of Plaintiffs' student loans and what they contend were alleged misapplications of their payments.  Plaintiffs stretch that core issue into claims for common law fraud, violation of the New Jersey Consumer Fraud Act, and several variations on a breach contract claim.  (Compl., ¶¶ 310-358.)

- 4 -

## B.    <u>Written Discovery.</u>

Plaintiffs' written discovery requests follow the same pattern as their Complaint—overbroad and rife with irrelevancies.  Many requests are staggering in their scope.  (Certification of Benjamin E. Gordon (the "Gordon Cert."), Ex. 1.)

Nevertheless, Defendants responded to Plaintiffs' written discovery in good faith, and, and as of February 5, 2019, had produced 2,590 pages of documents. (Gordon Cert., Ex. 2.)    Where appropriate, Defendants asserted objections, including where the requests sought information that was irrelevant, burdensome, or disproportionate to the needs of the case.  (<u>Id.</u>)  In total, as of February 5, 2019, Defendants had provided Plaintiffs with promissory notes, over 700 pages of correspondence between the parties, over 1,300 pages of Defendants' records of communications, account notes concerning Plaintiffs, and almost 300 pages of payment histories.

## C.    <u>Plaintiffs' Motion to Compel and Judge Waldor's Decision.</u>

On November 19, 2018, Plaintiffs filed a motion to compel.  (Gordon Cert., Ex. 3.)  On December 20, 2019, Defendants' opposed Plaintiffs' motion and filed a cross-motion to compel.[2]  (Gordon Cert., Ex. 4.)  On January 8, 2019, Plaintiffs' filed an opposition to Defendants' cross-motion.  (Gordon Cert., Ex. 5.)

_____

[2]  As noted, Defendants' cross-motion to compel has not been decided and is not a subject of this re-filed appeal.

On January 22, 2019, Magistrate Judge Waldor presided over oral argument on Plaintiffs' motion (and Defendants' cross-motion).    Judge Waldor granted Plaintiffs' motion as to each of their discovery requests, with the exception of Document Request No. 10, which Judge Waldor denied without prejudice.  (See transcript of January 22, 2019 hearing (the "Transcript"), pp. 30:19-23; Gordon Cert., Ex. 6.)  Defendants seek review, by this Court, of Judge Waldor's decision. Defendants do not seek a blanket reversal of every part of Judge Waldor's decision.  Rather, they seek reversal of her decision as to Plaintiffs' Interrogatories Nos. 1-5, 7-18, 20-22 and 24-25 and Plaintiffs' Requests for Production of Documents Nos. 1-10, 13-17, 19, 21, 23 and 25-29.

## III.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 72(a), District of New Jersey Local Civil Rule 72.1(c)(1) and 28 U.S.C. § 636(b)(1)(A) grant litigants the right to appeal non-dispositive orders of magistrate judges to district judges.  Pursuant to Fed. R. Civ. P. 72(a), the "district judge . . . must modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." See also 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

A finding is considered "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." <u>U.S. v. United States Gypsum Co.</u>, 333 U.S. 364, 395 (1948).  A decision is considered contrary to the law if the magistrate judge has "misinterpreted or misapplied applicable law." <u>Doe v. Hartford Life Acc. Ins. Co.</u>, 237 F.R.D. 545, 548 (D.N.J. 2006).   The district court is only bound by the clearly erroneous rule as to findings of fact, while the phrase "contrary to law" indicates plenary review as to matters of law. <u>Haines v. Liggett Group Inc.</u>, 975 F.2d 81, 91 (3d Cir. 1992).

## IV.    <u>ARGUMENT</u>

### A.    <u>This Appeal was Timely Filed on February 5, 2019.</u>

Defendants initially filed this appeal on February 5, 2019 out of an abundance of caution.  The Local Rules extend 14 days to appeal, to a District Judge, the decision of a Magistrate Judge.  L.Civ.R. 72.1(c)(1)(A).  That 14-day window does not open until the party aggrieved by the Magistrate Judge's decision "has been served with a copy of the Magistrate Judge's order . . . ." <u>Id.</u>  The Transcript was certified by the court reporter and made available to Defendants on January 30, 2018.  (Ex. 6, p. 38.)  In an abundance of a caution, and in the absence of a written order, Defendants initially proceeded as though February 5, 2019—14 days from the January 22 hearing—was the deadline to appeal.

**B.    Many of Plaintiffs' Requests are Objectionable as Irrelevant and Not Proportional to the Needs of This Case.**

Defendants objected to many of Plaintiffs' discovery requests because they are staggeringly broad in scope, well beyond the limits of Rule 26.  And all the more so in light of the 2015 amendments to Rule 26, which made clear that relevance and proportionality are the cornerstones of discovery under the Federal Rules:

> Parties may obtain discovery regarding any nonprivileged matter that is **relevant to any party's claim or defense** and **proportional to the needs of the case**, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (emphasis added).  On the other end of the spectrum are fishing expeditions, which are *highly* discouraged and, under the federal framework, ought to be impossible.  See North Shore-Long Island Jewish Health Systems, Inc. v. Multiplan, Inc., 325 F.R.D. 36, 48 (E.D.N.Y. 2018) ("[T]he party seeking discovery must make a prima facie showing that the discovery sought is more than merely a fishing expedition.") (citation omitted).

Indeed, as the Advisory Committee Notes to the 2015 Amendments to Rule 26 make clear, the whole point of re-establishing proportionality as a cornerstone of federal discovery (initially put in place in 1983 and scaled back in 1993) was to

"deal with the problem of over-discovery" and "guard against . . . disproportionate discovery." The Advisory Committee made explicitly clear that the proportionality standard was "intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse."

Relevancy under Rule 26 must be determined based on the claims that Plaintiffs assert in *this* case. <u>See</u> Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to <u>any party's claim or defense</u> . . .") (emphasis added). And Plaintiffs' claims—from which relevancy must be determined—fall into three categories: (1) alleged fraud (Compl., ¶¶ 310-316); (2) alleged violation of the New Jersey Consumer Fraud Act (Compl., ¶¶ 317-332); and (3) alleged breach of contract and the implied covenant of good faith and fair dealing (Compl., ¶¶ 333-358).

Common law fraud requires (amongst other things) a material misrepresentation by one party to the other. <u>See</u>, <u>e.g.</u>, <u>Triffin v. Automatic Data Processing, Inc.</u>, 926 A.2d 362, 368 (N.J. Super Ct. App. Div., 2007) (elements of common law fraud, under New Jersey law: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.")

Though Plaintiffs go into great length and detail—309 paragraphs—on the purported factual basis for *all* of their claims, they fail to actually identify a single alleged misrepresentation that purportedly forms the basis of their *fraud* claim. Defendants are left to guess. However, Plaintiffs' fraud claim appears to be based on purported misrepresentations (whatever those might be) made *to them*. (See Compl, ¶ 311 (". . . representations to be made *to Plaintiffs* . . . .") (emphasis added).) Additionally, nowhere in Plaintiffs' 309-paragraph story is any reference to any alleged misrepresentation made to anyone other than Plaintiffs.

Similarly, Plaintiff's claim for violation of the New Jersey Consumer Fraud Act concerns alleged issues with the servicing of *their loans*. (Compl., ¶ 323 ("Defendants' unfair practices and conduct were directed toward Plaintiffs.").) This is not a class action.

Under New Jersey law, claims for breach of contract and breach of the implied covenant of good faith and fair dealing are intertwined. See, e.g., Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Associates, 864 A.2d 387, 395 (N.J. 2005) (In New Jersey, "a covenant of good faith and fair dealing is implied in every contract." The only contracts that Plaintiffs identify in their Complaint are their own promissory notes. (Compl. ¶¶ 333-354.) Likewise, their claim for alleged breach of the implied covenant of good faith and fair dealing concerns only their own promissory notes. (Id., ¶¶ 355-358.)

There is no exception to Rule 26, or any right to expanded discovery, for fraud cases. Yet, that was the backbone of Plaintiffs' motion to compel. (<u>See</u> Ex. 3, pp. 3, 9, 12 (claiming, without authority, that "an action in fraud widens the scope of discovery"); Ex. 5, p. 4 (baldly declaring that "an action for fraud broadens the scope of discovery . . . .").) That reasoning may also have formed a basis for Judge Waldor's decision. (<u>See</u> Ex. 6, pp. 25:25-26:4.) Plaintiffs fail to cite even one case for their wayward proposition that cases involving fraud claims need not comply with Rule 26.

It is against this backdrop that Plaintiffs' discovery requests must be analyzed for relevance and proportionality. Many of their requests—including many of the ones Defendants were directed to answer—seek information or documents that are wholly irrelevant and not proportional to the needs of this case. Defendants believe that it was erroneous and contrary to Rule 26 to require them to respond to these requests. <u>See</u> <u>U.S. Gypsum Co.</u>, 333 U.S. at 395; <u>Hartford Life Acc. Ins. Co.</u>, 237 F.R.D. at 548.

The specific requests at issue are discussed below.

### 1. Plaintiffs' Objectionable Discovery as to Defendants' Organizational Structure

In **Interrogatories Nos. 1-2 and Requests Nos. 1-2, 26**, Plaintiffs seek discovery regarding Defendants' organizational structure, broken down by "the head and/or deputy head of the department that was responsible for creating and/or

implementing" a litany of alleged polices, programs or business units.  (See Ex. 1.)

This information is irrelevant to Plaintiffs' claims.  As such, Defendants properly

interposed objections while, at the same time, directing Plaintiffs' to publicly-

available sources of information regarding Defendants' corporate relationship.

(See Ex. 2.)  This strikes the appropriate balance of proportionality under Rule 26.

The information Plaintiffs seek regarding the "head and/or deputy head" of

every department in every member of Defendants' corporate family—even though

only one of those entities (NSL) had anything to do with Plaintiffs or their loans—

has no probative value.  Neither the organizational structure, nor which people

hold "head and/or deputy head" positions have anything to do with any alleged

misrepresentation made to Plaintiffs by Defendants, Defendants' servicing of

Plaintiffs' loans or Plaintiffs' promissory notes.  This information simply isn't

relevant.

Plaintiffs also requested that Defendants produce "all agreements . . .

including drafts . . . related to the consummation" of the 2014 corporate spinoff

that created Navient Corporation and NSL.  (See Ex. 1, Request No. 26.)  Looking

past the obvious—that this request calls for a trove of drafts that, on their face,

would be protected by the attorney-client privilege and the work product

doctrine—the details of Defendants' corporate formation has nothing to do with

how NSL serviced Plaintiffs' student loans.  This information is not only irrelevant

and confidential, but highly disproportionate to the needs of the case insofar as Defendants would have to search for five-year-old transactional documents that are unrelated to their day-to-day business.

Defendants provided Plaintiffs with the history of Defendants' corporate formation, and explained their relationship to each other (corporate parent and subsidiary).  But that is as far as Defendants need go.  The actual contract documents relating to these transactions are not a proper subject of discovery under Rule 26 in this case (which has nothing to do with the formation of those entities).

Respectfully, it was clear error and contrary to Rule 26 to force Defendants to disclose this irrelevant material.  Doing so would not proportional to the needs of this case.

### 2.    Plaintiffs' Objectionable Discovery as to Other Borrowers.

Defendants also properly objected to Plaintiffs' requests regarding Defendants' accounts for other borrowers, as well as complaints filed by other borrowers, state attorneys general and other government agencies.  (See Ex. 1, **Interrogatories Nos. 3-5, 13-14 and Document Requests Nos. 8-9.**)  This information is entirely irrelevant to this case, overly-burdensome to collect and produce, disproportionate to the case, not to mention highly confidential and protected by federal statutes.

This case concerns Plaintiffs' claims concerning *their own* loans. Information on what may have occurred with respect to other customers, or in other lawsuits, is completely irrelevant. NSL services loans for approximately *12 million* customers under numerous different loan programs, including dozens of programs that differ from the loan programs in which Plaintiffs participated. Information concerning these other borrowers has no relevance whatsoever to Plaintiffs, nor to their loans. To the contrary, Plaintiffs' claims are based on alleged interactions between Defendants and Plaintiffs. (See supra, § IV.B.)

There is a significant overarching issue with these requests. The information Defendants maintain for other customers is highly confidential. Indeed, Defendants have a statutory duty to protect it. And that duty outweighs any probative value (there is none) contained in other customers' records. Forcing Defendants to produce this information would be forcing them undertake a Herculean task, or break the law.

The Gramm-Leach Bliley Act, 15 U.S.C. § 6801 *et seq*. ("GLBA"), prohibits financial institutions from any unauthorized use of a customer's nonpublic records. Under the GLBA, in order to disclose the information that Plaintiffs seek, Defendants would have to clearly and conspicuously disclose in writing to each and every of its customers that their information will go to Plaintiffs. Defendants would have to allow each customer the opportunity to direct that such information

- 14 -

not be disclosed, and they would have to give each customer an explanation of how the customer can exercise their nondisclosure option.   15 U.S.C. § 6802.   Only after all the above actions are taken would Defendants be allowed to release such information to Plaintiffs.   This would be an immense undertaking, all to get information that is utterly irrelevant.

Even if the information and documents sought by these requests were not highly confidential, they would still not be relevant, nor would their identification, collection and production be proportional to the limited needs of this case.   In **Interrogatory No. 13**, for example, Plaintiffs demand that Defendants count every single payment correction that they have ever made, for any customer.   Judge Waldor limited this interrogatory to a seven-year period.   (See Ex. 6, p. 30:19-23.) But this is still a staggeringly overbroad request.

First, payment corrections to the other people's accounts have nothing to do with Plaintiffs.   This information is completely irrelevant.   And it is sometimes the case that customers request a payment correction due to a change of mind on the application of a payment—i.e., a payment correction that has nothing to do with Defendants.   (Gordon Cert., Ex. 7, ¶ 6.)   Also, in point of fact, Defendants have already produced information on the payment corrections for *Plaintiffs' loans*— which are the only payment corrections relevant to this case.   (Ex. 2, Response to Interrogatory No. 13.)

- 15 -

<u>Second</u>, Defendants do not keep a running count of payment corrections that would allow them to respond to this request. (Ex. 7, ¶ 6.) Defendants would, thus, have to manually review *every* account—for all 12 million customers—for a seven-year period. (<u>Id.</u>, ¶¶ 6-7.) That process would take hundreds, if not thousands, of man-hours. (<u>Id.</u>, ¶ 7.) Such a mammoth undertaking cannot square with Plaintiffs' obligation under Rule 26 to engage in proportionate discovery.

**Interrogatory No. 14** and **Requests Nos. 8 and 9** are other examples of the irrelevance and lack of proportionality that is endemic of Plaintiffs' discovery requests. In the interrogatory, Plaintiffs demand that Defendants identify *every* complaint filed against them in *any* state or federal court, with *any* attorney's general office, or with *any* of the Department of Justice, the Consumer Financial Protection Bureau or the Department of Education. This is "limited" only to the extent that: (1) the complaint must fall into one of seven broad categories; and (2) in light of Judge Waldor's decision, the complaint must have been made within a 7-year period. (<u>See</u> Ex. 1; Ex. 8, p. 30:19-23.) The document requests are even less limited. Request No. 8 demands the production of all "complaints" (no matter where filed) for a related—and similarly broad—list of categories. (<u>See</u> Ex. 1.) Request No. 9 demands all "pleadings, orders, judgments and/or decisions" from any case in which Defendants were named, related to the same (broad) list of categories. (<u>See</u> <u>id.</u>)

- 16 -

There is currently no way for Defendants to gather this information by any sort of automated means. (Gordon Cert., Ex. 8, ¶¶ 5-7.) Therefore, to comply, Defendants would need to engage in a manual review of their business records to identify and compile whatever responsive information and/or documents may exist. (Id.) Such an exercise is not only time-consuming and expensive (highly disproportionate to the needs of the case), but it would result only in the gathering of useless information (irrelevant). Ordering Defendants to undertake this effort was, respectfully, clearly erroneous and contrary to the discovery limits of Rule 26.

Identification, collection and production of the information Plaintiffs seek in these various requests would be particularly wasteful in light of the fact that none of it could even theoretically be admissible. Federal Rule of Evidence 404 precludes other-acts evidence for the purpose of showing that an individual has the propensity to act in a particular manner:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

Fed. R. Evid. 404.

It is apparent that Plaintiffs want to use information about other borrowers and other lawsuits to argue that any alleged wrongdoing in other cases proves that Plaintiffs too were (somehow) wronged. But they are not allowed to do that. The

- 17 -

Federal Rules of Evidence specifically bar such evidence unless the proponent can satisfy a four part test:  the evidence "is (1) offered for a proper non-propensity purpose that is at issue in the case; (2) relevant to that identified purpose; (3) sufficiently probative under Rule 403 such that its probative value is not outweighed by any inherent danger of unfair prejudice; and (4) accompanied by a limiting instruction, if requested."  U.S. v. Caldwell, 760 F.3d 267, 277-78 (3d Cir. 2014).  The rule applies to both criminal and civil cases.  Ansell v. Green Acres Contracting Co., 347 F.3d 515 (3d Cir. 2003) (citing Fed.R.Evid. 404 advisory committee's note).  For example, in Becker v. ARCO Chem. Co., 207 F.3d 176, 191 (3d Cir. 2000), the Court held that evidence introduced by the plaintiff alleging an Age Discrimination in Employment Act (ADEA) violation that his employer had previously requested that he fabricate a reason to terminate another worker was inadmissible because it was offered to show action in conformity with the prior act.

The same principle applies here.  The information Plaintiffs seek—which cannot be used to advance their claims—is neither relevant, admissible, nor proportionate to the needs of the case.  As matter of law, under Rule 26, Plaintiffs' discovery must be limited to their *own* loans.

- 18 -

### 3.    Plaintiffs' Objectionable Discovery as to the Design of Defendants' Online Systems and Forms.

In **Interrogatories Nos. 7, 20-22 and Requests Nos. 6-7, 13-15**, Plaintiffs seek discovery regarding the physical design of Defendants' website, through which borrowers can access their accounts, as well as the process of how certain of Defendants' forms, such as billing statements, were created. This discovery would capture the least relevant, least proportional information and documents that Plaintiffs seek. These are not topics on which Plaintiffs are entitled to discovery.

Defendants already responded to Plaintiffs' requests on how payments were applied to *their* loan accounts, how alleged errors were identified and corrected on *their* accounts, and how *their* telephone inquiries and online inquiries were identified and responded to. (Ex. 2.) But the information Plaintiffs seek in these requests goes much further. Some of the more outlandish examples:

- Plaintiffs seek detailed information about the software architecture that underlays Defendants' online systems—including "the computer code/application code" for NSL's "payment application" and "Online portal" systems—from 2003 until now. (Ex. 1., Requests Nos. 6 and 7.)

- Plaintiffs asked Defendants to "explain and describe in detail" why the fields for unpaid interest and unpaid fees are set forth in the same column. (Ex. 1, Interrogatory No. 20.)

- Plaintiffs asked Defendants to "explain and describe in detail" why the "'Messages' and 'Correspondence' sections are separate websites on the Online portal." (Ex. 1, Interrogatory No. 22.)

- Plaintiffs even demand to know how Defendants picked the *fonts* on their billing statements. (Ex. 1, Request No. 13.)

Plaintiffs' requests far exceed the bounds of relevant discovery and are not proportional to the needs of the case. Information on how and why the tabs on Defendants' website were set up, or the merits of one font over another have no relevance to any of their claims.

Plaintiffs' demand for source code (which they would not, presumably, even be able to read or understand) is particularly inappropriate considering: (1) the great expense of obtaining it; (2) the fact that it is highly confidential and proprietary; and (3) the fact that it is irrelevant to this case. There are no claims in this case for negligent website design or negligent font selection.

Plaintiffs' claims turn on the interactions between themselves and Defendants, and the handling of their loans—a claim for an accounting, at its core. Plaintiffs' fraud claim concerns alleged misrepresentation by Defendants to Plaintiffs. Plaintiffs statutory claim concerns how Defendants serviced Plaintiffs' loans. And Plaintiffs' breach of contract claims concern the extent to which Defendants allegedly breached Plaintiffs' promissory notes. The process of how Defendants' forms and website were created has no probative value. Rule 26 does not allow the grotesquely broad and transparent fishing expedition to which Plaintiffs are engaged.

**4.    Plaintiffs' Objectionable Requests as to the Compensation of Individual Employees, Including Executives that Had No Role in Servicing Plaintiffs' Loans**

In **Interrogatories No. 15-18** and **Document Request No. 10**,[3] Plaintiffs seek information regarding Defendants' compensation structure for customer service representatives, underwriters and loan officers, reviewers of cosigner applications, and even corporate executives. Plaintiffs contend such information would show how the compensation programs relate to Defendants' business practices, loan servicing, and interactions with borrowers like Plaintiffs. (Ex. 3, pp. 22, 36.)

These requests, like many others, seek irrelevant information having no relationship to Plaintiffs' claims. The compensation of literally thousands of Defendants' employees (almost all of whom have no connection whatsoever to Plaintiffs or their loans) has nothing to do with Plaintiffs' claims. These requests also seek highly confidential and private employee information. And some, like those with respect to executives, are even more attenuated. There is no plausible explanation for why the compensation for executives could remotely be relevant to Plaintiffs' claims. And likewise for "underwriters and loan officers," since Defendants do not originate loans.

---

[3] Judge Waldor denied Plaintiffs' motion to compel as to Request No. 10, but she did so without prejudice "subject to answering how people are paid." (Ex. 6, p. 21:9-11.)

### 5.    Plaintiffs' Objectionable Request as to All Loan Products Offered by Defendants Since January 1, 2003.

In **Interrogatory No. 25,** Plaintiffs seek "all loan products offered by Defendants since January 1, 2003." (Ex. 1.) To reiterate, this case is about Plaintiffs' and *their* loans. Whatever other loan products NSL may have offered in the past, or may offer now, have no bearing whatsoever on Plaintiffs' claims in *this* case. This information is entirely irrelevant.

### 6.    Plaintiffs' Objectionable Request as to the Privileged Materials that went into the FACT SHEET.

In **Request No. 25,** Plaintiffs seek "all drafts, memoranda, notes and related communications related to creation of the Navient FACT SHEET on Legal Action posted on October 19,2017 on your website." (Ex. 1.) The Navient Fact Sheet on Legal Action was a document prepared to address certain facts pertaining to other litigation pending against various Navient-family companies. The most current version is available at https://news.navient.com/static-files/52a18ce6-7313-434c-81f8-0f30609b1963. The legal actions set forth on the Fact Sheet are wholly different from this case, as were the legal actions set forth on the October 29, 2017 Fact Sheet. One thing both Fact Sheets have in common is that neither have anything to do with Plaintiffs, who filed this case in January 2018—two months *after* the October 2017 Fact Sheet was published. If the Fact Sheet itself is irrelevant, so too are the materials that went into its creation. Moreover, much of

- 22 -

the supporting material for the Fact Sheet is protected by the attorney-client privilege or the work product doctrine. Plaintiffs have no right to that information, even it were relevant, which it is not.

Respectfully, it was clear error and contrary to Rule 26 to grant Plaintiffs' motion to compel as to Plaintiffs' Interrogatories Nos. 1-5, 7-18, 20-22 and 24-25 and Plaintiffs' Requests for Production of Documents Nos. 1-10, 13-17, 19, 21, 23 and 25-29. None of the information or documents sought in those discovery requests is relevant to—or even probative of—the extent to which Defendants' made any misrepresentations *to Plaintiffs*, or committed any actionable conduct in servicing *Plaintiffs' student loans* or breached any of *Plaintiffs' promissory notes* (and, to be clear, Defendants did not do any of that). <u>Second</u>, nearly all of the information and documents Plaintiffs' seek in those discovery requests would require significant amounts of Defendants' money, time and other resources to identify, collect and produce. These requests are neither relevant nor proportional to the needs of this case, in violation of Rule 26.

### C.    Defendants Already Answered in full a Number of Plaintiffs' Discovery Requests that Are Subject to Judge Waldor's Decision.

Defendants already provided full and complete answers to many of Plaintiffs' discovery requests. Specifically, Defendants already fully answered **Interrogatories Nos. 8-12, 22, 24** and **Requests Nos. 3-5, 16-17, 19, 21, 23, 25, 27-29.** (<u>See</u> Ex. 2.) Judge Waldor, respectfully, overlooked those answers in her

decision.  The mere fact that Plaintiffs do not agree with Defendants' responses, or that they have follow up questions, does not render Defendants' prior responses deficient.  Consistent with the Rules, Defendants have already and will continue to supplement their responses if they discover additional, responsive, non-privileged information or documents.

## V.    <u>CONCLUSION</u>

Plaintiffs still have not shown relevance for their discovery demands, which are highly disproportionate to the needs of the case.  Respectfully, it was clear error and contrary to Rule 26 to grant Plaintiffs' motion to compel as to Plaintiffs' Interrogatories Nos. 1-5, 7-18, 20-22 and 24-25 and Plaintiffs' Requests for Production of Documents Nos. 1-10, 13-17, 19, 21, 23 and 25-29.  Defendants respectfully request that the Court review and reverse the January 22, 2019 decision of Judge Waldor as set forth more fully above.

Respectfully submitted,

*/s/ Benjamin E. Gordon*
Eric M. Hurwitz (NJ ID 030681999)
Benjamin E. Gordon (NJ ID No. 027112011)
STRADLEY RONON
STEVENS & YOUNG, LLP
A Pennsylvania Limited Liability Partnership
457 Haddonfield Road, Suite 100
Cherry Hill, NJ   08002
T: (856) 321-2400
F: (856) 321-2415

E: ehurwitz@stradley.com;
   bgordon@stradley.com;

*Counsel for Defendants,*
*Navient Corporation and Navient Solutions,*
*LLC, incorrectly sued as "Navient Solutions,*
*Inc. f/k/a Sallie Mae, Inc."*

Dated:  August 9, 2019